**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LUIS CUEVAS-DELVILLAR,**

                              **Petitioner,**                  **1:04-CV-1220**

  **v.**                                                    **(NAM)**

                                                      **Related Criminal Action**

**UNITED STATES OF AMERICA,**              **1:03-CR-0034**

                            **Respondent.**
_____

**APPEARANCES**                            **OF COUNSEL:**

**LUIS CUEVAS-DELVILLAR**
Petitioner, _pro se_
11870-052
FCI Fort Dix
P.O. Box 38
Unit 5741
Fort Dix, NJ 08640

**OFFICE OF THE UNITED**            **EDWARD P. GROGAN, Esq.**
**STATES ATTORNEY**                  Assistant U.S. Attorney
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207-2924

**NORMAN A. MORDUE, Chief United States District Judge**

**<u>MEMORANDUM-DECISION AND ORDER</u>**

**I.**      **<u>BACKGROUND</u>**[1]

     Petitioner Luis Cuevas-DelVillar, a citizen of the Dominican Republic, entered the United

States in June, 1974 after having been issued an immigrant visa that expired on October 10, 1974.

In 1991, Cuevas-DelVillar was convicted of second degree criminal possession of a controlled

---

     [1]     The background information contained in this Memorandum-Decision and Order is derived from the documents filed in the present civil action, _Cuevas-DelVellar v. United States_, 1:04-CV-1220") ("04-CV-1220"), as well as the related criminal matter, _United States v. Cuevas-DelVillar_, 1:03-CR-0034 (N.D.N.Y.) ("03-CR-0034").

substance in Queens, New York and thereafter sentenced to a term of seven years to life imprisonment. *See* http://nysdocslookup.docs.state.ny.us/GCA00P00/ WIQ2/WINQ120; inmate name "Cuevas, Luis". On October 10, 1997, following a hearing before an Immigration Judge relating to Cuevas-DelVillar's immigration status, petitioner was deported to his native Dominican Republic from John F. Kennedy airport in New York City.

On October 15, 2001, an immigration officer interviewed Cuevas-DelVillar, who at the time was in the custody of the Department of Correctional Services ("DOCS") as a result of another state-court conviction. The immigration officer eventually discovered that Cuevas-DelVillar had illegally re-entered the United States after having been previously deported from this country without having first received permission from either the United States Attorney General to reapply for such admission.

As a result of the foregoing, a federal grand jury sitting in the Northern District of New York returned an indictment against Cuevas-DelVillar charging him with illegally re-entering the United States after deportation in violation of 8 U.S.C. § 1326.[2] *See* 03-CR-0034, Dkt. No. 1 ("Indictment"). The Federal Public Defenders Office for the Northern District of New York was appointed to defend Cuevas-DelVillar concerning the criminal charge brought against him, and on August 7, 2003, following negotiations between Cuevas-DelVillar's attorney and the Office of the United States Attorney for the Northern District of New York ("United States Attorney"), Cuevas-DelVillar appeared via video conference before this Court for purposes of entering a guilty plea to the charge in the Indictment. *E.g.*, 03-CR-0034, Dkt. No. 9. At that proceeding, the

---

[2]    This statute provides, in part, that any alien convicted of an aggravated felony who has been deported and thereafter enters the United States without the express consent of the Attorney General "shall be fined under [Title 18],   ... imprisoned not more than 20 years, or both  ...." *See* 8 U.S.C. § 1326(b).

Assistant United States Attorney prosecuting the case on behalf of the Government discussed, in the presence of Cuevas-DelVillar, the factual basis for the plea, and noted that his sentencing exposure under the United States Sentencing Guidelines ("Sentencing Guidelines"), based upon his criminal history category of IV, was between seventy-seven and ninety-six months. *See* Transcript of Change of Plea (8/7/03) ("Plea Tr.") at pp. 14-16.[3]

On December 4, 2003, Cuevas-DelVillar appeared before this Court for sentencing. At that proceeding, after hearing arguments from defense counsel and the Government relating to the sentence the parties believed should be imposed on Cuevas-DelVillar, this Court determined that petitioner's total offense level of twenty one, combined with his criminal history category of IV, subjected Cuevas-DelVillar to a range of imprisonment under the Sentencing Guidelines of between fifty-seven to seventy-one months. *See* Transcript of Sentencing of Luis-Cuevas Cuevas-DelVillar (12/4/03) ("Sentencing Tr.") at p. 10. This Court thereafter sentenced Cuevas-DelVillar to a term of forty-two months imprisonment, which sentence was to be served concurrent with the sentence Cuevas-DelVillar was already serving in state court.[4] *Id.* A criminal judgment reflecting that sentence was thereafter filed in the related criminal case on December 23, 2003. *See* 03-CR-0034, Dkt. No. 16 ("December, 2003 Judgment").[5]

---

[3]    The Assistant United States Attorney noted that the above-referenced sentencing range was based upon the assumption that Cuevas-DelVillar's total offense level was twenty-four. Plea Tr. at p. 16. The prosecutor noted that there was a possibility that Cuevas-DelVillar's offense level might be as low as sixteen, which would decrease Cuevas-DelVillar's range of imprisonment to between thirty-three and forty-one months. *Id.*

[4]    Significantly, Cuevas-DelVillar never waived his right to file an appeal in the related criminal action. *See, e.g.*, Sentencing Tr. at p. 11 (Court advising parties that Cuevas-DelVillar "can certainly [file an] appeal if he chooses to").

[5]    The Court notes that the December, 2003 Judgment specifically noted that Cuevas-DelVillar was to begin serving his sentence on December 4, 2003. *See id.* at p. 2. That aspect of the judgment was consistent with the Court's statement at sentencing regarding the time at which Cuevas-DelVillar's federal sentence was to commence. *See* Sentencing Tr. at p. 10.

The record further reflects that on December 9, 2003, Cuevas-DelVillar sent a letter to his

attorney in which petitioner advised his counsel that:

> It was brought to [Cuevas-DelVillar's] attention that I can appeal
> the concurrent time of my sentence.  I was told I have ten days from
> the time of my sentence to do this.  I was wondering if you could
> help me to do this.  Please let me know.  Anything you could do
> would be greatly appreciated.

*See* 04-CV-1220, Dkt. No. 18 at p. 1.  On December 29, 2003, trial counsel wrote to Cuevas-

DelVillar and advised him that:

> There is nothing that the Judge could do in our case to affect your
> state sentence, other than have run [*sic*] concurrently.  Therefore,
> any attempt to appeal your sentence would not have any benefit.

*Id.* at p. 2.  Trial counsel never filed any appeal on Cuevas-DelVillar's behalf.

Cuevas-DelVillar filed the present Motion to Vacate, Set Aside or Correct his sentence

pursuant to 28 U.S.C. § 2255 on or about October 17, 2004.[6]  *See* 04-CV-1220, Dkt. No. 1

("Motion to Vacate") at p. 6.  In his application, Cuevas-DelVillar alleges that:  i) his trial counsel

rendered ineffective assistance by failing to file and pursue an appeal on behalf of Cuevas-

DelVillar; ii) this Court lacked jurisdiction to "prosecute" Cuevas-DelVillar for illegal re-entry

into the United States, apparently because of defects which he claims existed at the deportation

hearing over which the Immigration Judge presided; iii) the sixteen point enhancement to Cuevas-

DelVillar's total offense level was invalid; and iv) the aforementioned enhancement was

impermissible because his due process rights were violated at his earlier immigration hearing.

---

[6]     This is the date on which petitioner apparently signed his petition.  The Second Circuit has held
that, due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be
properly filed at the time he hands the papers to the prison authorities for transmittal to the court.  *Dory v. Ryan*,
999 F.2d 679, 681-82 (2d Cir.), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994); *Izzo v. United States*, No. 00 CV
4087, 2006 WL 1026718, at *3 n.3 (E.D.N.Y. Apr 14, 2006) (applying prison mailbox rule to inmate's § 2255
motion to vacate sentence).

4

*See* Motion to Vacate at pp. 4-5.  Cuevas-DelVillar attached to his Motion to Vacate a supporting

memorandum of law.  *See* Attachment 1 to Motion to Vacate ("Supporting Mem.").  On

December 3, 2004, the Government filed its memorandum in opposition to petitioner's Motion to

Vacate.  *See* 04-CV-1220, Dkt. No. 7 ("Resp. Mem.").  Petitioner thereafter filed a Traverse in

further support of his Motion to Vacate.  *See* 04-CV-1220, Dkt. No. 11 ("Traverse ").

## II.    DISCUSSION

In its response, the United States Attorney argues, *inter alia*, that Cuevas-DelVillar is

procedurally barred from asserting the claims he raises in this action because he did not file with

the Second Circuit a direct appeal concerning his conviction.  *See* Resp. Mem. at pp. vi-ix.

The failure on the part of a federal inmate to file an appeal typically constitutes a

procedural default on all claims based upon the record which the party subsequently seeks to raise

in a motion to vacate brought pursuant to 28 U.S.C. § 2255.  *See United States v. Pipitone*, 67

F.3d 34, 38 (2d Cir. 1995) (citations omitted); *Forrestal v. United States*, 187 F.Supp.2d 37, 40

(N.D.N.Y. 2002) (Munson, S.J.) ("'[a] motion under 2255 is not a substitute for an appeal'")

(quoting *United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998)) (other citation omitted);

*United States v. Braithwaite*, No. 94-CV-1613, 1995 WL 442187, at *2 (N.D.N.Y. July 25, 1995)

(McAvoy, C.J.) ("section 2255 motions cannot serve as vehicles for direct appeal").[7]

To overcome such a procedural default and thereby enable a district court to consider the

---

[7]         It should be noted, however, that the Supreme Court has clearly held that an ineffective
assistance of counsel claim may be asserted for the first time in a collateral proceeding under § 2255, "whether or
not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504
(2003); *see also Nelson v. United States*, 380 F.Supp.2d 100, 105-06 (N.D.N.Y. 2005) (Kahn, J.) (citing
*Massaro*).  Thus, Cuevas-DelVillar cannot properly be found to have procedurally forfeited his ineffective
assistance claim (*see* Motion to Vacate, Ground One) due to his failure to file a direct appeal in the related
criminal matter.  *E.g. Warren v. United States*, No. 04CIV.3631, 2005 WL 1653917, at *4-5 (S.D.N.Y. July 13,
2005) (ineffective assistance of counsel claim not procedurally barred despite petitioner's failure to pursue direct
appeal of conviction).

merits of a § 2255 motion, the movant generally must establish cause for his failure to file an appeal and prejudice resulting therefrom. *Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992); *Forrestal*, 187 F.Supp.2d at 40.[8]

In the present action, Cuevas-DelVillar argues that his trial attorney wrongfully failed to file a notice of appeal on petitioner's behalf despite the fact that petitioner specifically instructed his counsel to file an appeal. *See* Motion to Vacate, Ground One.[9] Petitioner asserts that such conduct on the part of his counsel constituted cause for Cuevas-DelVillar's procedural default. *See* Traverse at pp. 1-2; *see also United States v. Tamez*, No. 06CIV3111, 2006 WL 2854336, at *5 (S.D.N.Y. Oct. 5, 2006) ("'[i]neffective assistance of counsel ... is cause for a procedural default'" (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

As noted above, prior to the time at which a notice of appeal was required to have been timely filed in the related criminal matter, Cuevas-DelVillar wrote to his attorney and:  i) notified counsel that petitioner was aware that he had a right to appeal; ii) acknowledged the time limit for filing same; and iii) requested counsel's assistance in filing an appeal. *See* 04-CV-1220, Dkt. No. 18 at p. 1.  At a minimum, that letter placed counsel on notice that Cuevas-DelVillar intended to pursue an appeal, and therefore imposed on counsel a duty to consult with his client regarding the "advantages and disadvantages of taking an appeal, and making a reasonable effort to discover

---

[8]     A final exception to this procedural bar exists where the litigant can establish that he is "actually innocent" of the crime of which he was convicted and for which he was sentenced. *See De Jesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998) (citations omitted); *Forrestal*, 187 F.Supp.2d at 40.

[9]     Cuevas-DelVillar argues that counsel's failure to file an appeal denied Cuevas-DelVillar the opportunity to challenge both:  i) "the validity of his conviction;" and ii) the sixteen point enhancement that was added to Cuevas-DelVillar's total offense level under the Sentencing Guidelines. *See* Supporting Mem. at p. 1.

[Cuevas-DelVillar's] wishes."[10]  *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).

The correspondence between Cuevas-DelVillar and his counsel relating to the issue of whether petitioner sought to pursue an appeal does not suggest that Cuevas-DelVillar was ever persuaded by counsel to forego any appeal.  To the contrary, several months after requesting that counsel assist Cuevas-DelVillar in pursuing an appeal, he wrote a letter to his attorney in which Cuevas-DelVillar declared that his federal sentence was not being implemented in the manner consistent with his belief as to the concurrent nature of the sentence imposed on him by the Court.  *See* 04-CV-1220, Dkt. No. 18 at p. 3.  The following month, Cuevas-DelVillar wrote to counsel and inquired of him "whatever happen[ed] to the appeal [Cuevas-DelVillar] originally asked [counsel]" to file.  *Id.* at p. 4.  In response, petitioner's attorney did not advise Cuevas-DelVillar that no appeal was ever filed, but counsel instead merely offered his opinion that an appeal would be fruitless.  *Id.* at p. 5.  By letter dated June 16, 2004, Cuevas-DelVillar wrote to his counsel and appeared to more clearly express the basis for his belief that the sentence imposed on him by this Court was improper.  Specifically, in that letter, petitioner noted that according to the Bureau of Prisons, Cuevas-DelVillar began serving his federal sentence on December 4, 2003 – the date on which he was sentenced by this Court.  *Id.* at pp. 7-8; *see also* 03-CR-0034, Dkt. No. 16.  Cuevas-DelVillar claimed in that letter that the sentence imposed on him should have begun to run from October 15, 2001 – the date referenced in the Indictment to which Del Villar pleaded guilty.  04-CV-1220, Dkt. No. 18 at p. 7.  The June 16, 2004 letter written by Cuevas-DelVillar also requested that his counsel "file [Cuevas-DelVillar's] appeal without any undue delay."  *Id.*  On

---

[10]     Another quite reasonable reading of Cuevas-DelVillar's December, 2003 letter is that such correspondence, while perhaps inartfully drafted, reflected a request by Cuevas-DelVillar that an appeal be filed on his behalf by counsel.

June 23, 2004, counsel responded to that letter and appeared to suggest that although Cuevas-DelVillar could still file an appeal, such an appeal would be denied by the Second Circuit as meritless.  *See id.* at p. 11 (counsel advising petitioner that issue he raised in his June, 2004 letter "*is* not an appealable issue with regard to the term of concurrent sentence") (emphasis added).

In *Flores-Ortega*, the Supreme Court held that where an attorney's deficient performance deprives a defendant of an appellate proceeding altogether, such action constitutes objectively unreasonable conduct for which prejudice to the defendant will be presumed.  *Id.*, 528 U.S. at 483-84;[11] *see also Campusano*, 442 F.3d at 774 n.4 (citing *Flores-Ortega*).

Based upon the exchange of correspondence between counsel and Cuevas-DelVillar, this Court finds that counsel's failure to either file an appeal on behalf of Cuevas-DelVillar in the related criminal action, or, at a minimum, seek permission to file a late notice of appeal pursuant to Fed.R.App.P. 4(b), constituted ineffective assistance sufficient to preclude a finding that Cuevas-DelVillar is procedurally barred from asserting his claims herein.[12]

Respondent alternatively contends that Cuevas-DelVillar is not entitled to the relief he seeks for reasons other than his procedural default.  *See* Resp. Mem. at pp. iii-vi, ix-x, 1-4.[13] However, where an individual has been wrongfully deprived of his right to pursue a direct appeal,

---

[11]     Where an attorney believes his client's appeal would be frivolous, he is typically required to file a brief in compliance with *Anders v. California*, 386 U.S. 738 (1967).  *Anders* requires counsel to submit an appellate brief to the appellate court and to the defendant in which counsel may request permission to withdraw as counsel but in which counsel also refers the appellate court to "anything in the record that might arguably support the appeal." *Id.* at 744; *see also  Campusano v. United States*, 442 F.3d 770, 774 (2d Cir. 2006).

[12]     Although an evidentiary hearing is typically required to resolve the issue of whether a defendant asked his attorney to file an appeal, *see*, *e.g.*, *Ocampo v. United States*, No. 04-CV-0729,  2006 WL 2466873, at *2 (N.D.N.Y. Aug. 24, 2006) (Mordue, C.J.), the correspondence referenced above between Cuevas-DelVillar and his counsel obviated the need for such a hearing in this action.

[13]     The page number following page "x" in the respondent's brief is inexplicably identified by respondent as page no. "1," after which page numbers "2" through "4" appear.  *See* Resp. Br.

the Second Circuit has opined that such individual "is to be allowed a direct appeal." *Campusano*, 442 F.3d at 777.

In *Mena v. United States*, No. 04 CIV. 6523, 2004 WL 2734454 (S.D.N.Y. Nov. 30, 2004), the court was confronted with a § 2255 petition filed by a petitioner who claimed, *inter alia*, that his attorney wrongfully failed to file an appeal in the criminal case related to the petitioner's motion to vacate.  *Mena*, 2004 WL 2734454, at *2.  After opining that the petitioner was entitled to habeas intervention, the *Mena* court determined that the "interests of justice suggest that [the Court] vacate Mena's judgment, originally filed February 5, 2003, and enter a new judgment as of today, with the identical sentence, from which petitioner may timely appeal." *Mena*, 2004 WL 2734454, at *4.

This Court finds the approach followed by the court in *Mena* to be both fair and sensible regarding the manner in which to proceed with the present action.  Therefore, because the correspondence between Cuevas-DelVillar and his counsel indicates that petitioner was improperly deprived of his right to appeal the criminal judgment below, this Court directs that the December, 2003 Judgment in the related criminal action be vacated, and that a new judgment be entered in such case as of today.  The new criminal judgment shall contain the identical sentence and other conditions reflected in the December, 2003 Judgment, from which petitioner may now timely appeal.[14]  Finally, Cuevas-DelVillar's Motion to Vacate is dismissed  without prejudice as untimely brought in that it was filed before a final judgment was entered in the related criminal action.  *E.g.*, *Mena*, 2004 WL 2734454, at * 4.  Cuevas-DelVillar has ten days from today's date

---

[14]     In the event Cuevas-DelVillar has already paid the $100.00 monetary penalty referenced in pages 5-6 of the December, 2003 Judgment being vacated by this Order, Cuevas-DelVillar shall not be required to again pay that fee.

within which to file a notice of appeal in the related criminal action.  *See* Fed. R.App. P. 4(b).

**WHEREFORE**, it is hereby

**ORDERED**, for the reasons stated above, the December 23, 2003 judgment in 03-CR–0034 (Dkt. No. 16) is hereby **VACATED**, and it is further

**ORDERED**, that a **new criminal judgment be entered in 03-CR–0034** forthwith which contains the identical sentence and other conditions reflected in the December, 2003 Judgment, and it is further

**ORDERED**, that the Motion to Vacate filed in the present civil action is **DISMISSED WITHOUT PREJUDICE** as premature, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties by regular or electronic mail.


Dated:  November 22, 2006

Norman A. Mordue
Chief United States District Court Judge